UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEWAYNE WESTER<br>United States of America *ex rel*,<br><br>Petitioner,<br>v.<br><br>WARDEN KIMBERLY BUTLER,<br><br>Respondent. | )<br>)<br>)<br>)<br>) Case No. 14-cv-5352<br>)<br>) Judge John W. Darrah<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

Petitioner DeWayne Wester has filed a Petition for a Writ of *Habeas Corpus*, pursuant to 28 U.S.C. § 2254, against Respondent Warden Kimberly Butler. For the reasons stated below, Wester's § 2254 Petition is denied. Wester's Motion to Stay is also denied.

**BACKGROUND**

In 2000, following a jury trial in Lake County, Illinois, Wester was convicted of the first-degree murder of Brian Blanchard. (Resp. Ans., Exh. A, *People v. Wester*, No. 99-CF-1675 (Ill. App. Ct. Sep. 6, 2002) at 1-2.)[1] At trial, Wester admitted he shot and killed Blanchard but claimed self-defense. (*Id.* at 8-10; Resp. Ans., Exh. D at ¶ 8.) Wester testified that Blanchard had tried to steal money that Wester had won in a dice game and had punched Wester in the face, after which the two tussled. (Resp. Ans., Exh. A at 8-10.) Wester further testified that he had

---

[1] The factual findings of a state trial or appellate court are presumed true in a federal *habeas* proceeding unless the petitioner can rebut the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Wester has not challenged the state appellate court's summary of facts. Therefore, the following facts are drawn from the state appellate court's opinions.

1

fired warning shots from his gun and shot Blanchard twice because Blanchard came after him and bystanders had blocked his escape. (*Id.* at 9.)

However, the State's witnesses contradicted Wester's testimony. They testified that there was no dice game and that, contrary to Wester's testimony, Blanchard had not put Wester in a chokehold. (*Id.* at 10.) Prior to the shooting, witnesses heard Wester and Blanchard arguing about money, including Wester saying to Blanchard "give me my f---ing money." (*Id.* at 3-4.) Blanchard's sister, Sherene Blanchard – whose name was not disclosed in discovery – testified on rebuttal that Blanchard had asked her for money on the morning of the shooting, but she responded that she would not pay his drug debt. (*Id.* at 11.) Three witnesses further testified that Wester struck Blanchard first by pistol-whipping him. (Resp. Ans., Exh. A at 3-6; *see also* Resp. Ans., Exh. D, *People v. Wester*, No. 99-CF-1675 (Ill. App. Ct. June 10, 2013 at ¶ 33).) According to the witnesses, Wester shot Blanchard and then, after Blanchard fell to the ground, fired additional shots while running away. (*Id.*)

At Wester's request, the trial court instructed the jurors on self-defense and involuntary manslaughter but not second-degree murder. (Resp. Ans., Exh. A at 18-19.) After his conviction, Wester was sentenced to forty-five years' imprisonment. (*Id.* at 1.)

Wester appealed both his conviction and his sentence. He raised the following arguments: (1) the evidence was insufficient to prove him guilty beyond a reasonable doubt of first-degree murder; (2) trial counsel was ineffective for not advising him adequately about whether to tender a jury instruction on second-degree murder; and (3) the sentencing court abused its discretion by considering improper factors. (*Id.*) On September 6, 2002, the state appellate court affirmed Wester's conviction and sentence. (*Id.* at 11-25.)

On October 18, 2002, Wester renewed his claims by filing a petition for leave to appeal ("PLA") to the Illinois Supreme Court. (Resp. Ans., Exh. E.) The Illinois Supreme Court denied his PLA on February 5, 2003. (Resp. Ans., Exh. F.)

In March 2003, Wester filed a *pro se* post-conviction petition in state court. (Resp. Ans., Exh. D at ¶ 4; Exh. Z.) His petition was amended by counsel in 2005 and raised a claim that the court had erred by allowing a witness to testify in rebuttal. (Resp. Ans. D. at ¶ 4.) After a series of preliminary proceedings and remands, Wester was appointed new counsel in the public defender's office, who filed an amended petition. Later, private counsel, Gregory Nikitas, appeared on Wester's behalf and filed another amended petition. (Resp. Ans. Exh. D at ¶ 5.) That petition argued that: (1) Wester was unfairly surprised by the testimony of Sherene Blanchard; (2) three witnesses wrongly offered hearsay testimony; and (3) his trial counsel, Michael Conway, was ineffective for convincing Wester that he could not tender jury instructions on both second-degree murder and involuntary manslaughter. (Resp. Ans., Exh. AA at C481-83.) After holding an evidentiary hearing, the trial court denied Wester's petition in September 2011. (Resp. Ans., Exh. D at ¶ 5.) The trial court credited Conway's testimony from the evidentiary hearing that Conway had discussed both instructions with Wester and had recommended submitting both to the jury but that Wester had refused and had chosen to tender only the involuntary manslaughter instruction, as he was entitled to do under Illinois law. (Resp. Ans. Exh. AA at C535.)

Wester appealed, arguing that his private counsel, Nikitas, was ineffective for failing to amend the petition to add claims that (1) Conway was ineffective for failing to object to Sherene Blanchard's testimony as hearsay and failing to object to the State's closing argument and (2) Wester's direct appellate counsel, Kim Campbell, was ineffective for failing to raise an

ineffective assistance claim against Conway on these grounds. (Resp. Ans., Exh. J at 20-21; *see also* Resp. Ans., Exh. D at ¶ 23.) On June 10, 2013, the appellate court affirmed the dismissal of the post-conviction petition. (Resp. Ans., Exh. D at ¶¶ 27-30.) Wester's subsequent PLA was denied by the Illinois Supreme Court on March 27, 2013. (*See generally* Resp. Ans., Exhs. O & P.) Wester later moved unsuccessfully to vacate his conviction under 735 Ill. Comp. Stat. § 5/2-1401.

On May 26, 2014, Wester filed the instant § 2254 Petition, raising the following claims:[2]

(1) trial counsel was ineffective for telling him that he must choose either a jury instruction on second-degree murder or involuntary manslaughter, but not both (Doc. 1 at 5);

(2) his sentence is based on improper factors (*id.)*;

(3) he was denied his right to due process and a fair trial because the trial court allowed Sherene Blanchard to offer rebuttal testimony, though the State did not disclose her name in pretrial discovery (*id.* at 6);

(4) he was denied due process and fair trial by a jury instruction which misled the jury into believing that he bore the burden of proving self-defense (*id.*);

(5) he was denied due process and fair trial by a jury instruction which led jurors to believe that all intentional or knowing homicides are unjustified (*id.* at 7); and

(6) he was ineffectively assisted by his trial and appellate counsel when they failed to challenge Sherene Blanchard's testimony as hearsay (*id.*).

On the same day as filing his Petition, Wester moved to stay this case to allow him to exhaust some claims in state court, which this Court denied on September 23, 2014. Wester then moved to reconsider the Court's initial denial of his stay request, which this Court denied on October 22, 2014, and to "delete" Claims 4 and 5 from his Petition, which this Court granted on November 11, 2014.

---

[2] The Petition is dated and postmarked in May but was not entered on the Court's docket until July 11, 2014.

On December 1, 2014, Wester filed a petition in the state court for leave to file a successive post-conviction petition challenging the jury instructions used at his trial; that petition remains pending. (Resp. Ans. Exh. Q.) On December 4, 2014, Wester filed another Motion to Stay this Petition while he pursues that state successive petition, and this Court ordered the Respondent to respond to that Motion. In his reply brief in support of his Petition, Wester affirmed that he has deleted Claims 4 and 5 from his Petition on the basis that he has not exhausted those claims.

## LEGAL STANDARD

Historically, *habeas corpus* relief has been viewed as "an extraordinary remedy, 'a bulwark against convictions that violate fundamental fairness.'" *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993) (quoting *Engle v. Isaac*, 456 U.S. 107, 126 (1982)) (other internal citations omitted). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this Court's authority to grant petitions for *habeas corpus*. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). It provides that relief may not be granted to any claim adjudicated on the merits in a state court proceeding unless the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). The federal court deferentially reviews the decision of the last state court. *Griffin v. Pierce*, 622 F.3d 831, 841 (7th Cir. 2010). State court factual findings are presumed to be correct unless the petitioner rebuts this presumption with "clear and convincing evidence." *Schriro*, 550 U.S. at 474 (citing 28 U.S.C. § 2254(e)(1)).

Before a federal court can address the merits of a § 2254 petition, the petitioner must satisfy several procedural steps in state court. 28 U.S.C. § 2254(b)(1). The petitioner must have given "the state courts a fair opportunity to address his claims and to correct any error of constitutional magnitude." *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001) (internal citations omitted). Specifically, the petitioner must have "fairly presented" each of his *habeas* claims to the state's appellate and supreme courts, including the underlying operative facts and controlling legal principles for each claim. *McKee*, 598 F.3d at 382; *see also Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007). Failure to present each claim to the state judiciary leads to procedural default of that claim and bars the federal court from reviewing the claim's merits. *McKee*, 598 F.3d at 382. Furthermore, a federal court will not review a *habeas* claim that was presented to the state court but rejected on "an independent and adequate state ground." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991)).

The petitioner may overcome procedural default where "the petitioner can demonstrate both cause for and prejudice stemming from that default, *or* he can establish that the denial of relief will result in a miscarriage of justice." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) (internal citations omitted) (emphasis in original). Cause "is defined as 'an objective factor, external to the defense, that impeded the defendant's efforts to raise the claim in an earlier proceeding.'" *McKee*, 598 F.3d at 382 (quoting *People v. Britt-El*, 794 N.E.2d 204, 209 (Ill. 2002)). Prejudice is "'an error which so infected the entire trial that the resulting conviction violates due process.'" *Id.* (quoting *Britt-El*, 794 N.E.2d at 209). To establish that denial of the *habeas* petition would result in a miscarriage of justice, the petitioner must demonstrate that "he is actually innocent of the offense for which he was convicted, *i.e.*, that no reasonable juror

would have found him guilty of the crime but for the error(s) he attributes to the state court." *Lewis*, 390 F.3d at 1026.

## ANALYSIS

*Motion to Stay*

As noted above, Wester has moved to stay his *habeas* petition while he seeks leave to file a successive state post-conviction petition raising unexhausted arguments in Claims 4 and 5.

A stay and abeyance of a *habeas* petition is "available only in limited circumstances" because it "frustrates AEDPA's objective of encouraging finality [and] undermines AEDPA's goal of streamlining federal *habeas* proceedings." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). A district court has the discretion to stay a "mixed" *habeas* petition – one that contains both exhausted and unexhausted claims – where "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id*, 544 U.S. at 278. Conversely, it is an abuse of discretion to stay a *habeas* petition where the petitioner has not demonstrated good cause for the delay or where the unexhausted claims are "plainly meritless." *Id.* at 277. Where a stay is not justified, the district court may permit the petitioner to delete the unexhausted claims from the *habeas* petition and proceed with the exhausted claims. *Id.* at 278.

Here, Wester's Motion to Stay identifies no good cause for failing to raise Claims 4 and 5 earlier. Rather, he simply claims that "time constraints" prevented him from exhausting those claims. This is insufficient to excuse Wester's delay. Furthermore, Claims 4 and 5, which claim error with the jury instructions, are clearly without merit. A review of the jury instructions demonstrates that they set forth the correct legal principles, including that the defendant is presumed innocent, that the State bears the burden of proof and must prove beyond a reasonable

doubt that the defendant was not justified in the force he used, and that a person may be justified in using lethal force in self-defense. The instructions also told the jurors to find Wester guilty only if his conduct was both "without lawful justification" and either knowing or intentional.

A stay of Wester's Petition is not appropriate and would constitute an abuse of discretion. Wester's Motion to Stay is denied. Accordingly, Wester's unexhausted claims, Claims 4 and 5, are deleted from the Petition.

*Claim 1 – Choice between Jury Instructions*

In Claim 1, Wester argues that trial counsel was ineffective when he advised Wester that he must choose between instructing the jury on second-degree murder or involuntary manslaughter but not both. (Pet. at 5.) This claim is procedurally defaulted because Wester did not fairly and fully present this claim's operative facts through one complete round of state-court review.

In his direct appeal PLA, Wester argued that his decision to forgo the second-degree-murder instruction was based on his trial counsel's failure to adequately explain the instructions and defenses to him. (Resp. Ans., Exh. E at 14.) He stated that he chose involuntary manslaughter because to him it "sound [sic] a lot better" than second-degree murder. (*Id.*)[3] Wester did not present the current rationale – that he wanted jurors to hear both instructions, but his counsel told him that he could not do so – until his post-conviction petition. (Resp. Ans., Exh. AA at C442.) However, on appeal and represented by counsel, Wester abandoned all arguments about the jury instructions. (*See* Resp. Ans., Exh. J at 19-37.) References to the jury

---

[3] Furthermore, the appellate court held that Wester had no reasonable probability of obtaining a second-degree-murder verdict even if the instruction had been given, due to the overwhelming evidence that Wester was the aggressor and not in imminent danger of death or great bodily harm when he shot Blanchard. (Resp. Ans., Exh. A at 20.) Accordingly, Wester could not establish that he was prejudiced by the failure to give the instruction.

8

instruction argument resurfaced in Wester's post-conviction PLA, but by that point, Wester had already procedurally defaulted on the argument in the appellate court. (Resp. Ans., Exh. M at 33-34.)

The exhaustion requirement not only requires that the broad claim be raised but also the legal and factual arguments that support the claim. *Mckee,* 598 F.3d 374 at 382; *see also McNary v. Lemke,* 708 F.3d 905, 919 (7th Cir. 2013) (holding that although petitioner "raised the claim of ineffective assistance of counsel in the state court, he did not raise the underlying facts"); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). Here, Wester did not raise the legal and factual arguments underlying Claim 1 to the Illinois Appellate Court. He also has not set forth any that would constitute cause to excuse his procedural default. *See Lewis*, 390 F.3d at 1026. Consequently, Claim 1 is procedurally defaulted.

*Claim 2 – Improper Sentencing Factors*

In Claim 2, Wester asserts that the sentencing judge considered "improper factors" and abused his discretion, violating due process and "fair trial" principles. Even though Wester has couched this claim in constitutional terms of due process and fair trial, his claim appears to boil down to an argument that the judge violated state sentencing law, a state law claim that is not cognizable under 28 U.S.C. § 2254. *Habeas* relief is only appropriate when the petitioner's custody "violates the Constitution, treaties, or laws of the United States." *Gonzalez v. DeTella*, 127 F.3d 619, 621 (7th Cir. 1997) (citing *Estelle v. McGuire*, 502 U.S. 62 (1991)). Accordingly, errors of state law will not support a writ of *habeas corpus* unless they rise to the level of a constitutional violation, such as a due process violation. *See id.* (trial court's alleged improper

admission of evidence was an error of state law that did not violate constitutional due process). Here, Wester's alleged state law error does not rise to the level of a constitutional violation and, therefore, is not a basis for issuing *habeas* relief.

Furthermore, even if a federal claim could be asserted on this basis, Wester procedurally defaulted on any such claim. In Wester's direct appeal PLA, he accused the sentencing judge of violating state law when the judge considered "improper factors" and that in doing so the judge committed an "abuse of discretion." (Resp. Ans., Exh. E at 18.) Wester made no mention of federal law in making this argument. Wester was required "to alert fairly the state court to the federal nature of the claim and to permit that court to adjudicate squarely that federal issue." *Villanueva v. Anglin*, 719 F.3d 769, 775 (7th Cir. 2013) (citing *Verdin v. O'Leary,* 972 F.2d 1467, 1474 (7th Cir. 1992)). Wester's allusion to "improper factors" and "abuse of discretion" did not put the state courts on fair notice that there was a federal issue. *See Wilson v. Briley*, 243 F.3d 325, 328 (7th Cir. 2001) (affirming dismissal of *habeas* petition where petitioner did not alert the Illinois courts to the constitutional nature of his claim). Consequently, Wester failed to raise this claim in one complete round of state appellate review.

In his reply brief, Wester blames the failure to "fairly present" this claim on his appellate counsel. (Reply br. at 36.) This is insufficient to constitute cause to explain his default. Therefore, Claim 2 is procedurally defaulted.

*Claim 3 – Sherene Blanchard's Rebuttal Testimony*

In Claim 3, Wester claims that he was denied due process and a fair trial when the state offered rebuttal testimony through Sherene Blanchard, who was not disclosed during pre-trial discovery. (Pet. at 6.) Wester asserted this unfair-surprise claim in his post-conviction petition. (Resp. Ans., Exh. AA at C481-82.) On appeal from that petition, however, Wester dropped this

10

claim. (Resp. Ans., Exh. D at ¶ 6.) By abandoning this argument, Wester failed to raise it in "one complete round" of state appellate review and, therefore, procedurally defaulted on it. *O'Sullivan*, 526 U.S. at 845.

In his reply brief, Wester argues that "any default of [his] due process claim was caused by his Appellate Counsel's failure to raise the issue on direct appeal." (Reply Br. at 43.) "[C]ause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim." *Murray v. Carrier*, 477 U.S. 478, 492 (1986). Wester has made no such showing that would excuse his default.

Therefore, Claim 3 is procedurally defaulted.

*Claim 6 – Ineffective Assistance of Counsel*

Finally, in Claim 6, Wester argues he received ineffective assistance when his appellate counsel, Greg Nikitas, failed to amend the post-conviction petition to allege that trial counsel, Michael Conway, was ineffective for failing to object on hearsay grounds to the testimony given by Sherene Blanchard. (Pet. at 7.) Wester did not raise this argument about Conway on direct appeal or in his *pro se* post-conviction petition. However, on appeal from the denial of his post-conviction petition, Wester argued that Nikitas should have amended the petition to include ineffective-assistance claims about both Conway and Wester's direct appellate counsel, Campbell. (Resp. Ans., Exh. D at ¶¶ 26-31.) In his *habeas* petition, Wester appears to have dropped any arguments about Campbell.

The state appellate court thoroughly addressed and rejected Wester's argument about Nikitas in its June 2013 decision denying Wester's post-conviction petition. (*Id.* ¶¶ 26-31.) The appellate court first noted that a defendant has no constitutional right to effective assistance of counsel in a post-conviction proceeding. (*Id.* (citing *People v. Flores*, 606 N.E.2d 1078, 1084

11

(Ill. 1992)). Rather, a defendant has "only a statutory right to *reasonable* assistance of counsel," which is created by state law. (*Id.* (emphasis in original)); *see also Flores*, 606 N.E.2d at 1084. The appellate court explained that Nikitas was required to flesh out the claims that were raised in Wester's *pro se* petition but was "not obligated to scour the record to add new claims." (*Id.* at ¶¶ 28-29 (citing *People v. Komes*, 954 N.E.2d 300 (Ill. App. Ct. 2011)).) The court held that Nikitas had fulfilled his obligations under Illinos Supreme Court Rule 651(c) and had provided reasonable assistance to Wester. (*Id.* at ¶¶ 28-30, 34.)

The court further held that Wester was not prejudiced by Nikitas's failure to raise the ineffective-assistance arguments, noting that post-conviction counsel is not required to raise frivolous or spurious claims on the defendant's behalf. (*Id.* at ¶¶ 31-32.) The court found that, even if Conway had objected to Sherene Blanchard's testimony, there was "simply no *reasonable* possibility, in light of the entirety of the trial evidence, [that] the result of the trial would have been different." (*Id.* at ¶ 32.) Therefore, even if Nikitas had raised ineffective-assistance-of-counsel claims about Conway or Campbell, those arguments would have failed. (*Id.* at ¶ 34.)

Wester has failed to show the appellate court's decision was "contrary to or involved an unreasonable application of clearly established Federal law" or was "based on an unreasonable determination of the facts in the light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d). The appellate court's holding was reasonable both for its conclusion that Nikitas had provided reasonable assistance and that Wester was not prejudiced by the failure to raise the argument about Conway. Consequently, Wester has failed to carry his burden demonstrating that he is entitled to *habeas* relief under § 2254. His Petition is denied.

*Certificate of Appealability*

"A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rules of Appellate Procedure 22. Seventh Circuit Rule 22(b) states: "In a *habeas corpus* proceeding in which detention complained of arises from process issued by a state court, or in a 28 U.S.C. § 2255 proceeding, the applicant cannot take an appeal unless a circuit justice or a district court judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."

To obtain a certificate of appealability under § 2253, a petitioner must demonstrate the denial of a constitutional right. This requires the petitioner to show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 120 S. Ct. 1595, 1603-04 (2000). Where the district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id.* at 1604. As discussed above, Wester has not demonstrated the denial of a constitutional right with respect to any of his claims. Accordingly, a certificate of appealability shall not issue.

## **CONCLUSION**

For all the reasons discussed above, Wester's Motion to Stay [19] and his 28 U.S.C. § 2254 Motion to vacate, set aside, or correct his sentence [1] are denied. Civil case is terminated.

Date:     June 10, 2015

_____
JOHN W. DARRAH
United States District Court Judge